# RICHARD I. WIDEMAN, ESQ.

3640 Sagunto Street #028
P.O. Box 1921
Santa Ynez, CA 93460-1921
PHONE (805) 2454-8916
FAX (805) 688-9424

September 5, 2013

NINTH CIRCUIT COURT OF APPEAL

Via ECF System

Re:    Sweeney vs. MASTR ADJUSTABLE RATE et al
       9th Cir # 12-55220 [USDC # 2:11-CV-05098-GW]
       FRAP RULE 28 (j) SUPPLEMENTAL AUTHORITY

To the Court:

Plaintiff/appellant's counsel has recently discovered two cases highly relevant
to the issues in this appeal. The first, Halajian v. Deutsch Bank (ED Cal,
February 14, 2013) denies a motion to dismiss and holds that a summary
judgment motion showing the authority of the contested signor is required in
the face of allegations of unauthorized signing. A copy is attached.

The second, Glaski v. Bank of America, 218 Cal App 4th 1079 (July 31, 2013),
holds that the assignment of a loan to a mortgage pool that was past 9 months
from the closing of the pool is VOID and supports an action to set aside a
foreclosure. In this case, Mr. Sweeney alleged, in his FIRST AMENDED
COMPLAINT (not in the record on appeal yet) that the securitization to US
Bank as trustee, was illegal in that it took place past the 90 days time. The
District Court rejected that argument (see: summary of allegations and
court's ruling on First Amended Complaint at Appellant's Appendix, top of p.
67). The *Glaski* case is a declaration of state law that such a claim does state
a cause of action for declaring a foreclosure void and compels reversal of the
dismissal of plaintiff's complaint here. A copy of the slip opinion is attached.

                              Very truly yours,

                              s/ *RICHARD I. WIDEMAN*
                              RICHARD I. WIDEMAN, ESQ.
                              Attorney for Appellant Sweeney

[This contains 211 words]

218 Cal App 4th 1079

Filed 7/31/13; pub. order 8/8/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

THOMAS A. GLASKI,

    Plaintiff and Appellant,

    v.

BANK OF AMERICA, NATIONAL
ASSOCIATION et al.

    Defendants and Respondents.

F064556

(Super. Ct. No. 09CECG03601)

**OPINION**

APPEAL from a judgment of the Superior Court of Fresno County. Alan M. Simpson, Judge.

Law Offices of Richard L. Antognini and Richard L. Antognini; Law Offices of Catarina M. Benitez and Catarina M. Benitez, for Plaintiff and Appellant.

AlvaradoSmith, Theodore E. Bacon, and Mikel A. Glavinovich, for Defendants and Respondents.

-ooOoo-

## INTRODUCTION

Before Washington Mutual Bank, FA (WaMu) was seized by federal banking regulators in 2008, it made many residential real estate loans and used those loans as collateral for mortgage-backed securities.[1] Many of the loans went into default, which led to nonjudicial foreclosure proceedings. Some of the foreclosures generated lawsuits, which raised a wide variety of claims. The allegations that the instant case shares with some of the other lawsuits are that (1) documents related to the foreclosure contained forged signatures of Deborah Brignac and (2) the foreclosing entity was not the true owner of the loan because its chain of ownership had been broken by a defective transfer of the loan to the securitized trust established for the mortgage-backed securities. Here, the specific defect alleged is that the attempted transfers were made *after the closing date* of the securitized trust holding the pooled mortgages and therefore the transfers were ineffective.

In this appeal, the borrower contends the trial court erred by sustaining defendants' demurrer as to all of his causes of action attacking the nonjudicial foreclosure. We conclude that, although the borrower's allegations are somewhat confusing and may contain contradictions, he nonetheless has stated a wrongful

---

[1] Mortgage-backed securities are created through a complex process known as "securization." (See Levitin & Twomey, *Mortgage Servicing* (2011) 28 Yale J. on Reg. 1, 13 ["a mortgage securitization transaction is extremely complex"].) In simplified terms, "securitization" is the process where (1) many loans are bundled together and transferred to a passive entity, such as a trust, and (2) the trust holds the loans and issues investment securities that are repaid from the mortgage payments made on the loans. (Oppenheim & Trask-Rahn, *Deconstructing the Black Magic of Securitized Trusts: How the Mortgage-Backed Securitization Process is Hurting the Banking Industry's Ability to Foreclose and Proving the Best Offense for a Foreclosure Defense* (2012) 41 Stetson L.Rev. 745, 753-754 (hereinafter, *Deconstructing Securitized Trusts*).) Hence, the securities issued by the trust are "mortgage-backed." For purposes of this opinion, we will refer to such a trust as a "securitized trust."

2

foreclosure claim under the lenient standards applied to demurrers. We conclude that a borrower may challenge the securitized trust's chain of ownership by alleging the attempts to transfer the deed of trust to the securitized trust (which was formed under New York law) occurred after the trust's closing date. Transfers that violate the terms of the trust instrument are void under New York trust law, and borrowers have standing to challenge void assignments of their loans even though they are not a party to, or a third party beneficiary of, the assignment agreement.

We therefore reverse the judgment of dismissal and remand for further proceedings.

## FACTS

### The Loan

Thomas A. Glaski, a resident of Fresno County, is the plaintiff and appellant in this lawsuit. The operative second amended complaint (SAC) alleges the following: In July 2005, Glaski purchased a home in Fresno for $812,000 (the Property). To finance the purchase, Glaski obtained a $650,000 loan from WaMu. Initial monthly payments were approximately $1,700. Glaski executed a promissory note and a deed of trust that granted WaMu a security interest in the Property (the Glaski deed of trust). Both documents were dated July 6, 2005. The Glaski deed of trust identified WaMu as the lender and the beneficiary, defendant California Reconveyance Company (California Reconveyance) as the trustee, and Glaski as the borrower.

Paragraph 20 of the Glaski deed of trust contained the traditional terms of a deed of trust and states that the note, together with the deed of trust, can be sold one or more times without prior notice to the borrower. In this case, a number of transfers purportedly occurred. The validity of attempts to transfer Glaski's note and deed of trust to a securitized trust is a fundamental issue in this appeal.

3

Paragraph 22—another provision typical of deeds of trust—sets forth the remedies available to the lender in the event of a default. Those remedies include (1) the lender's right to accelerate the debt after notice to the borrower and (2) the lender's right to "invoke the power of sale" after the borrower has been given written notice of default and of the lender's election to cause the property to be sold. Thus, under the Glaski deed of trust, it is the lender-beneficiary who decides whether to pursue nonjudicial foreclosure in the event of an uncured default by the borrower. The trustee implements the lender-beneficiary's decision by conducting the nonjudicial foreclosure.[2]

Glaski's loan had an adjustable interest rate, which caused his monthly loan payment to increase to $1,900 in August 2006 and to $2,100 in August 2007. In August 2008, Glaski attempted to work with WaMu's loan modification department to obtain a modification of the loan. There is no dispute that Glaski defaulted on the loan by failing to make the monthly installment payments.

Creation of the WaMu Securitized Trust

In late 2005, the WaMu Mortgage Pass-Through Certificates Series 2005-AR17 Trust was formed as a common law trust (WaMu Securitized Trust) under New York law. The corpus of the trust consists of a pool of residential mortgage notes purportedly secured by liens on residential real estate. La Salle Bank, N.A., was the original trustee for the WaMu Securitized Trust.[3] Glaski alleges that the WaMu Securitized Trust has no

---

[2] Civil Code section 2924, subdivision (a)(1) states that a "trustee, mortgagee, or beneficiary, or any of their authorized agents" may initiate the nonjudicial foreclosure process. This statute and the provision of the Glaski deed of trust are the basis for Glaski's position that the nonjudicial foreclosure in this case was *wrongful*—namely, that the power of sale in the Glaski deed of trust was invoked by an entity that was not the true beneficiary.

[3] Glaski's pleading does not allege that LaSalle Bank was the original trustee when the WaMu Securitized Trust was formed in late 2005, but filings with the Securities and Exchange Commission identify LaSalle Bank as the original trustee. We provide this

4

continuing duties other than to hold assets and to issue various series of certificates of investment. A description of the certificates of investment as well as the categories of mortgage loans is included in the prospectus filed with the Securities and Exchange Commission (SEC) on October 21, 2005. Glaski alleges that the investment certificates issued by the WaMu Securitized Trust were duly registered with the SEC.

The closing date for the WaMu Securitized Trust was December 21, 2005, or 90 days thereafter. Glaski alleges that the attempt to assign his note and deed of trust to the WaMu Securitized Trust was made after the closing date and, therefore, the assignment was ineffective. (See fn. 12, *post*.)

WaMu's Failure and Transfers of the Loan

In September 2008, WaMu was seized by the Office of Thrift Supervision and the Federal Deposit Insurance Corporation (FDIC) was appointed as a receiver for WaMu. That same day, the FDIC, in its capacity as receiver, sold the assets and liabilities of WaMu to defendant JPMorgan Chase Bank, N.A., (JP Morgan). This transaction was documented by a "PURCHASE AND ASSUMPTION AGREEMENT WHOLE BANK" (boldface and underlining omitted) between the FDIC and JP Morgan dated as of September 25, 2008. If Glaski's loan was not validly transferred to the WaMu Securitized Trust, it is possible, though not certain, that JP Morgan acquired the Glaski deed of trust when it purchased WaMu assets from the FDIC.[4] JP Morgan also might have acquired the right to service the loans held by the WaMu Securitized Trust.

---

information for background purposes only and it plays no role in our decision in this appeal.

[4] Another possibility, which was acknowledged by both sides at oral argument, is that the true holder of the note and deed of trust cannot be determined at this stage of the proceedings. This lack of certainty regarding who holds the deed of trust is not uncommon when a securitized trust is involved. (See Mortgage and Asset Backed Securities Litigation Handbook (2012) § 5:114 [often difficult for securitized trust to

In September 2008, Glaski spoke to a representative of defendant Chase Home
Finance LLC (Chase),[5] which he believed was an agent of JP Morgan, and made an oral
agreement to start the loan modification process.  Glaski believed that Chase had taken
over loan modification negotiations from WaMu.

On December 9, 2008, two documents related to the Glaski deed of trust were
recorded with the Fresno County Recorder: (1) an "ASSIGNMENT OF DEED OF
TRUST" and (2) a "NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
DEED OF TRUST" (boldface omitted; hereinafter the NOD).  The assignment stated that
JP Morgan transferred and assigned all beneficial interest under the Glaski deed of trust
to "LaSalle Bank NA as trustee for WaMu [Securitized Trust]" together with the note
described in and secured by the Glaski deed of trust.[6]

Notice of Default and Sale of the Property

The NOD informed Glaski that (1) the Property was in foreclosure because he was
behind in his payments[7] and (2) the Property could be sold without any court action.

---

prove ownership by showing a chain of assignments of the loan from the originating
lender].)

[5] It appears this company is no longer a separate entity.  The certificate of
interested entities filed with the respondents' brief refers to "JPMorgan Chase Bank, N.A.
as successor by merger to Chase Home Finance, LLC."

[6] One controversy presented by this appeal is whether this court should consider
the December 9, 2008, assignment of deed of trust, which is not an exhibit to the SAC.
Because the trial court took judicial notice of the existence and recordation of the
assignment earlier in the litigation, we too will consider the assignment, but will not
presume the matters stated therein are true. (See pt. IV.B, *post.*)  For instance, we will
not assume that JP Morgan actually held any interests that it could assign to LaSalle
Bank. (See *Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366,
1375 [taking judicial notice of a recorded assignment does not establish assignee's
ownership of deed of trust].)

[7] Specifically, the notice stated that his August 2008 installment payment and all
subsequent installment payments had not been made.

6

The NOD also stated that "the present beneficiary under" the Glaski deed of trust had delivered to the trustee a written declaration and demand for sale. According to the NOD, all sums secured by the deed of trust had been declared immediately due and payable and that the beneficiary elected to cause the Property to be sold to satisfy that obligation.

The NOD stated the amount of past due payments was $11,200.78 as of December 8, 2008.[8] It also stated: "To find out the amount you must pay, or to arrange for payment to stop the foreclosure, ... contact: JPMorgan Chase Bank, National Association, at 7301 BAYMEADOWS WAY, JACKSONVILLE, FL 32256, (877) 926-8937."

Approximately three months after the NOD was recorded and served, the next official step in the nonjudicial foreclosure process occurred. On March 12, 2009, a "NOTICE OF TRUSTEE'S SALE" was recorded by the Fresno County Recorder (notice of sale). The sale was scheduled for April 1, 2009. The notice stated that Glaski was in default under his deed of trust and estimated the amount owed at $734,115.10.

The notice of sale indicated it was signed on March 10, 2009, by Deborah Brignac, as Vice President for *California Reconveyance*. Glaski alleges that Brignac's signature was forged to effectuate a fraudulent foreclosure and trustee's sale of his primary residence.

Glaski alleges that from March until May 2009, he was led to believe by his negotiations with Chase that a loan modification was in process with JP Morgan.

---

[8] The signature block at the end of the NOD indicated it was signed by Colleen Irby as assistant secretary for California Reconveyance. The first page of the notice stated that recording was requested by California Reconveyance. Affidavits of mailing attached to the SAC stated that the declarant mailed copies of the notice of default to Glaski at his home address and to Bank of America, care of Custom Recording Solutions, at an address in Santa Ana, California. The affidavits of mailing are the earliest documents in the appellate record indicating that Bank of America had any involvement with Glaski's loan.

7

Despite these negotiations, a nonjudicial foreclosure sale of the Property was conducted on May 27, 2009. Bank of America, as successor trustee for the WaMu Securitized Trust and beneficiary under the Glaski deed of trust, was the highest bidder at the sale.

On June 15, 2009, another "ASSIGNMENT OF DEED OF TRUST" was recorded with the Fresno County Recorder. This assignment, like the assignment recorded in December 2008, identified JP Morgan as the assigning party. The entity receiving all beneficial interest under the Glaski deed of trust was identified as Bank of America, "as successor by merger to 'LaSalle Bank NA as trustee for WaMu [Securitized Trust] ....'"[9] The assignment of deed of trust indicates it was signed by Brignac, as *Vice President for JP Morgan.* Glaski alleges that Brignac's signature was forged.

The very next document filed by the Fresno County Recorder on June 15, 2009, was a "TRUSTEE'S DEED UPON SALE." (Boldface omitted.) The trustee's deed upon sale stated that California Reconveyance, as the duly appointed trustee under the Glaski deed of trust, granted and conveyed to Bank of America, as successor by merger to La Salle NA as trustee for the WaMu Securitized Trust, all of its right, title and interest to the Property. The trustee's deed upon sale stated that the amount of the unpaid debt and costs was $738,238.04 and that the grantee, paid $339,150 at the trustee's sale, either in lawful money or by credit bid.

## PROCEEDINGS

In October 2009, Glaski filed his original complaint. In August 2011, Glaski filed the SAC, which alleged the following numbered causes of action:

---

[9] Bank of America took over La Salle Bank by merger in 2007.

8

(1) Fraud against JPMorgan and California Reconveyance for the alleged forged signatures of Deborah Brignac as vice president for California Reconveyance and then as vice president of JPMorgan;

(2) Fraud against all defendants for their failure to timely and properly transfer the Glaski loan to the WaMu Securitized Trust and their representations to the contrary;

(3) Quiet title against Bank of America, Chase, and California Reconveyance based on the broken chain of title caused by the defective transfer of the loan to the WaMu Securitized Trust;

(4) Wrongful foreclosure against all defendants, based on the forged signatures of Deborah Brignac and the failure to timely and properly transfer the Glaski loan to the WaMu Securitized Trust;

(5) Declaratory relief against all defendants, based on the above acts by defendants;

(8) Cancellation of various foreclosure documents against all defendants, based on the above acts by the defendants; and

(9) Unfair practices under California Business and Professions Code section 17200, et seq., against all defendants.

Among other things, Glaski raised questions regarding the chain of ownership, by contending that the defendants were not the lender or beneficiary under his deed of trust and, therefore, did not have the authority to foreclose.

In September 2011, defendants filed a demurrer that challenged each cause of action in the SAC on the grounds that it failed to state facts sufficient to constitute a claim for relief. With respect to the wrongful foreclosure cause of action, defendants argued that Glaski failed to allege (1) any procedural irregularity that would justify setting aside the presumptively valid trustee's sale and (2) that he could tender the amount owed if the trustee's sale were set aside.

9

To support their demurrer to the SAC, defendants filed a request for judicial notice concerning (1) Order No. 2008-36 of the Office of Thrift Supervision, dated September 25, 2008, appointing the FDIC as receiver of Washington Mutual Bank and (2) the Purchase and Assumption Agreement Whole Bank between the FDIC and JP Morgan dated as of September 25, 2008, concerning the assets, deposits and liabilities of Washington Mutual Bank.[10]

Glaski opposed the demurrer, arguing that breaks in the chain of ownership of his deed of trust were sufficiently alleged. He asserted that Brignac's signature was forged and the assignment bearing that forgery was void. His opposition also provided a more detailed explanation of his argument that his deed of trust had not been effectively transferred to the WaMu Securitized Trust that held the pool of mortgage loans. Thus, in Glaski's view, Bank of America's claim as the successor trustee is flawed because the trust never held his loan.

On November 15, 2011, the trial court heard argument from counsel regarding the demurrer. Counsel for Glaski argued, among other things, that the possible ratification of the allegedly forged signatures of Brignac presented an issue of fact that could not be resolved at the pleading stage.

Later that day, the court filed a minute order adopting its tentative ruling. As background for the issues presented in this appeal, we will describe the trial court's ruling on Glaski's two fraud causes of action and his wrongful foreclosure cause of action.

The ruling stated that the first cause of action for fraud was based on an allegation that defendants misrepresented material information by causing a forged signature to be

---

[10] The trial court did not explicitly rule on defendants' request for judicial notice of these documents, but referred to matters set forth in these documents in its ruling. Therefore, for purposes of this appeal, we will infer that the trial court granted the request.

placed on the June 2009 assignment of deed of trust. The ruling stated that if the
signature of Brignac was forged, California Reconveyance "ratified the signature by
treating it as valid." As an additional rationale, the ruling cited *Gomes v. Countrywide
Home Loans, Inc.* (2011) 192 Cal.App.4th 1149 (*Gomes*) for the proposition that the
exhaustive nature of California's nonjudicial foreclosure scheme prohibited the
introduction of additional requirements challenging the authority of the lender's nominee
to initiate nonjudicial foreclosure.

As to the second cause of action for fraud, the ruling noted the allegation that the
Glaski deed of trust was transferred to the WaMu Securitized Trust after the trust's
closing date and summarized the claim as asserting that the Glaski deed of trust had been
improperly transferred and, therefore, the assignment was void *ab initio*. The ruling
rejected this claim, stating: "[T]o reiterate, *Gomes v. Countrywide*, supra holds that there
is no legal basis to challenge the authority of the trustee, mortgagee, beneficiary, or any
of their authorized agents to initiate the foreclosure process citing Civil Code § 2924,
subd. (a)(1)."

The ruling stated that the fourth cause of action for wrongful foreclosure was
"based upon the invalidity of the foreclosure sale conducted on May 27, 2009 due to the
'forged' signature of Deborah Brignac and the failure of Defendants to 'provide a chain
of title of the note and the mortgage.'" The ruling stated that, as explained earlier, "these
contentions are meritless" and sustained the general demurrer to the wrongful foreclosure
claim without leave to amend.

Subsequently, a judgment of dismissal was entered and Glaski filed a notice of
appeal.

11

## DISCUSSION

### I.   STANDARD OF REVIEW

The trial court sustained the demurrer to the SAC on the ground that it did "not state facts sufficient to constitute a cause of action." (Code Civ. Proc., § 430.10, subd. (e).) The standard of review applicable to such an order is well settled. "[W]e examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory ...." (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.)

When conducting this de novo review, "[w]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. [Citations.]" (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) Our consideration of the facts alleged includes "those evidentiary facts found in recitals of exhibits attached to a complaint." (*Satten v. Webb* (2002) 99 Cal.App.4th 365, 375.) "We also consider matters which may be judicially noticed." (*Serrano v. Priest* (1971) 5 Cal.3d 584, 591; see Code Civ. Proc., § 430.30, subd. (a) [use of judicial notice with demurrer].) Courts can take judicial notice of the existence, content and authenticity of public records and other specified documents, but do not take judicial notice of the truth of the factual matters asserted in those documents. (*Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063, overruled on other grounds in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1262.)

We note "in passing upon the question of the sufficiency or insufficiency of a complaint to state a cause of action, it is wholly beyond the scope of the inquiry to ascertain whether the facts stated are true or untrue" as "[t]hat is always the ultimate question to be determined by the evidence upon a trial of the questions of fact." (*Colm v. Francis* (1916) 30 Cal.App. 742, 752.) )

12

II.    FRAUD

A.    Rules for Pleading Fraud

The elements of a fraud cause of action are (1) misrepresentation, (2) knowledge of the falsity or scienter, (3) intent to defraud—that is, induce reliance, (4) justifiable reliance, and (5) resulting damages. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) These elements may not be pleaded in a general or conclusory fashion. (*Id.* at p. 645.) Fraud must be pled specifically—that is, a plaintiff must plead *facts* that show with particularity the elements of the cause of action. (*Ibid.*)

In their demurrer, defendants contended facts establishing detrimental reliance were not alleged.

B.    First Cause of Action for Fraud, Lack of Specific Allegations of Reliance

Glaski's first cause of action, which alleges a fraud implemented through forged documents, alleges that defendants' act "caused Plaintiff to rely on the recorded documents and ultimately lose the property which served as his primary residence, and caused Plaintiff further damage, proof of which will be made at trial."

This allegation is a general allegation of reliance and damage. It does not identify the particular acts Glaski took because of the alleged forgeries. Similarly, it does not identify any acts that Glaski did not take because of his reliance on the alleged forgeries. Therefore, we conclude that Glaski's conclusory allegation of reliance is insufficient under the rules of law that require fraud to be pled specifically. (*Lazar v. Superior Court, supra*, 12 Cal.4th at p. 645.)

The next question is whether the trial court abused its discretion in sustaining the demurrer to the first fraud cause of action without leave to amend.

In March 2011, the trial court granted Glaski leave to amend when ruling on defendants' motion for judgment on the pleadings. The court indicated that Glaski's

13

complaint had jumbled together many different statutes and theories of liability and directed Glaski to avoid "chain letter" allegations in his amended pleading.

Glaski's first amended complaint set forth two fraud causes of action that are similar to those included in the SAC.

Defendants demurred to the first amended complaint. The trial court's minute order states: "Plaintiff is advised **for the last time** to plead each cause of action such that only the essential **elements** for the claim are set forth without reincorporation of lengthy 'general allegations'. In other words, the 'facts' to be pleaded are those upon which liability depends (i.e., 'the facts constituting the cause of action')."

After Glaski filed his SAC, defendants filed a demurrer. Glaski then filed an opposition that asserted he had properly alleged detrimental reliance. He did not argue he could amend to allege specifically the action he took or did not take because of his reliance on the alleged forgeries.

Accordingly, Glaski failed to carry his burden of demonstrating he could allege with the requisite specificity the elements of justifiable reliance and damages resulting from that reliance. (See *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [the burden of articulating how a defective pleading could be cured is squarely on the plaintiff].) Therefore, we conclude that the trial court did not abuse its discretion when it denied leave to amend as to the SAC's first cause of action for fraud.

C.   Second Fraud Cause of Action, Lack of Specific Allegations of Reliance

Glaski's second cause of action for fraud alleged that WaMu failed to transfer his note and deed of trust into the WaMu Securitized Trust back in 2005. Glaski further alleged, in essence, that defendants attempted to rectify WaMu's failure by engaging in a fraudulent scheme to assign his note and deed of trust into the WaMu Securitized Trust. The scheme was implemented in 2008 and 2009 and its purpose was to enable defendants to fraudulently foreclosure against the Property.

14

The second cause of action for fraud attempts to allege detrimental reliance in the following sentence: "Defendants, and each of them, also knew that the act of recording the Assignment of Deed of trust without the authorization to do so would cause Plaintiff to rely **upon Defendants' actions** by attempting to negotiate a loan modification with representatives of Chase Home Finance, LLC, agents of JP MORGAN." The assignment mentioned in this allegation is the assignment of deed of trust recorded in June 2009—no other assignment of deed of trust is referred to in the second cause of action.

The allegation of reliance does not withstand scrutiny. The act of recording the allegedly fraudulent assignment occurred in June 2009, after the trustee's sale of the Property had been conducted. If Glaski was induced to negotiate a loan modification at that time, it is unclear how negotiations occurring after the May 2009 trustee's sale could have diverted him from stopping the trustee's sale. Thus, Glaski's allegation of reliance is not connected to any detriment or damage.

Because Glaski has not demonstrated how this defect in his fraud allegations could be cured by amendment, we conclude that the trial court did not abuse its discretion in denying leave to amend the second cause of action in the SAC.

III.    WRONGFUL FORECLOSURE BY NONHOLDER OF THE DEED OF TRUST

A.    Glaski's Theory of Wrongful Foreclosure

Glaski's theory that the foreclosure was wrongful is based on (1) the position that paragraph 22 of the Glaski deed of trust authorizes only the lender-beneficiary (or its assignee) to (a) accelerate the loan after a default and (b) elect to cause the Property to be sold and (2) the allegation that a nonholder of the deed of trust, rather than the true beneficiary, instructed California Reconveyance to initiate the foreclosure.[11]

---

[11] The claim that a foreclosure was conducted by or at the direction of a nonholder of mortgage rights often arises where the mortgage has been securitized. (Buchwalter, *Cause of Action in Tort for Wrongful Foreclosure of Residential Mortgage,*

In particular, Glaski alleges that (1) the corpus of the WaMu Securitized Trust was a pool of residential mortgage notes purportedly secured by liens on residential real estate; (2) section 2.05 of "the Pooling and Servicing Agreement" required that all mortgage files transferred to the WaMu Securitized Trust be delivered to the trustee or initial custodian of the WaMu Securitized Trust before the closing date of the trust (which was allegedly set for December 21, 2005, or 90 days thereafter); (3) the trustee or initial custodian was required to identify all such records as being held by or on behalf of the WaMu Securitized Trust; (4) Glaski's note and loan were not transferred to the WaMu Securitized Trust prior to its closing date; (5) the assignment of the Glaski deed of trust did not occur by the closing date in December 2005; (6) the transfer to the trust attempted by the assignment of deed of trust recorded on June 15, 2009, occurred long after the trust was closed; and (7) the attempted assignment was ineffective as the WaMu Securitized Trust could not have accepted the Glaski deed of trust after the closing date because of the pooling and servicing agreement and the statutory requirements applicable to a Real Estate Mortgage Investment Conduit (REMIC) trust.[12]

---

52 Causes of Action Second (2012) 119, 149 [§ 11 addresses foreclosure by a nonholder of mortgage rights].)

[12] This allegation comports with the following view of pooling and servicing agreements and the federal tax code provisions applicable to REMIC trusts. "Once the bundled mortgages are given to a depositor, the [pooling and servicing agreement] and IRS tax code provisions require that the mortgages be transferred to the trust within a certain time frame, usually ninety dates from the date the trust is created. After such time, the trust closes and any subsequent transfers are invalid. The reason for this is purely economic for the trust. If the mortgages are properly transferred within the ninety-day open period, and then the trust properly closes, the trust is allowed to maintain REMIC tax status." (*Deconstructing Securitized Trusts*, *supra*, 41 Stetson L.Rev. at pp. 757-758.)

16

B.    Wrongful Foreclosure by a Nonholder of the Deed of Trust

The theory that a foreclosure was wrongful because it was initiated by a nonholder of the deed of trust has also been phrased as (1) the foreclosing party lacking standing to foreclose or (2) the chain of title relied upon by the foreclosing party containing breaks or defects. (See *Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 764; *Herrera v. Deutsche Bank National Trust Co.*, *supra*, 196 Cal.App.4th 1366 [Deutsche Bank not entitled to summary judgment on wrongful foreclosure claim because it failed to show a chain of ownership that would establish it was the true beneficiary under the deed of trust ]; *Guerroro v. Greenpoint Mortgage Funding, Inc.* (9th Cir. 2010) 403 Fed.Appx. 154, 156 [rejecting a wrongful foreclosure claim because, among other things, plaintiffs "have not pleaded any facts to rebut the unbroken chain of title"].)

In *Barrionuevo v. Chase Bank, N.A.* (N.D.Cal. 2012) 885 F.Supp.2d 964, the district court stated: "Several courts have recognized the existence of a valid cause of action for wrongful foreclosure where a party alleged not to be the true beneficiary instructs the trustee to file a Notice of Default and initiate nonjudicial foreclosure." (*Id.* at p. 973.) We agree with this statement of law, but believe that properly alleging a cause of action under this theory requires more than simply stating that the defendant who invoked the power of sale was not the true beneficiary under the deed of trust. Rather, a plaintiff asserting this theory must allege facts that show the defendant who invoked the power of sale was not the true beneficiary. (See *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1506 [plaintiff failed to plead specific facts demonstrating the transfer of the note and deed of trust were invalid].)

C.    Borrower's Standing to Raise a Defect in an Assignment

One basis for claiming that a foreclosing party did not hold the deed of trust is that the assignment relied upon by that party was ineffective. When a borrower asserts an assignment was ineffective, a question often arises about the borrower's standing to

17

challenge the assignment of the loan (note and deed of trust)—an assignment to which the borrower is not a party. (E.g., *Conlin v. Mortgage Electronic Registration Systems, Inc.* (6th Cir. 2013) 714 F.3d 355, 361 [third party may only challenge an assignment if that challenge would render the assignment absolutely invalid or ineffective, or void]; *Culhane v. Aurora Loan Services of Nebraska* (1st Cir. 2013) 708 F.3d 282, 291 [under Massachusetts law, mortgagor has standing to challenge a mortgage assignment as invalid, ineffective or void]; *Gilbert v. Chase Home Finance, LLC* (E.D.Cal., May 28, 2013, No. 1:13-CV-265 AWI SKO) 2013 WL 2318890.)[13]

California's version of the principle concerning a third party's ability to challenge an assignment has been stated in a secondary authority as follows:

> "Where an assignment is merely voidable at the election of the assignor, third parties, and particularly the obligor, cannot ... successfully challenge the validity or effectiveness of the transfer." (7 Cal.Jur.3d (2012) Assignments, § 43.)

This statement implies that a borrower can challenge an assignment of his or her note and deed of trust if the defect asserted would *void* the assignment. (See *Reinagel v. Deutsche Bank National Trust Co.* (5th Cir. 2013) ___ F.3d ___ [2013 WL 3480207 at p. *3] [following majority rule that an obligor may raise any ground that renders the assignment void, rather than merely voidable].) We adopt this view of the law and turn to the question whether Glaski's allegations have presented a theory under which the challenged assignments are void, not merely voidable.

We reject the view that a borrower's challenge to an assignment must fail once it is determined that the borrower was not a party to, or third party beneficiary of, the

---

[13] "Although we may not rely on unpublished California cases, the California Rules of Court do not prohibit citation to unpublished federal cases, which may properly be cited as persuasive, although not binding, authority." (*Landmark Screens, LLC v. Morgan, Lewis & Bockius, LLP* (2010) 183 Cal.App.4th 238, 251, fn. 6, citing Cal. Rules of Court, rule 8.1115.)

assignment agreement.  Cases adopting that position "paint with too broad a brush."
(*Culhane v. Aurora Loan Services of Nebraska*, *supra*, 708 F.3d at p. 290.)  Instead,
courts should proceed to the question whether the assignment was void.

      D.      Voidness of a Post-Closing Date Transfers to a Securitized Trust

      Here, the SAC includes a broad allegation that the WaMu Securitized Trust "did
not have standing to foreclosure on the ... Property, as Defendants cannot provide the
entire chain of title of the note and the [deed of trust]."[14]

      More specifically, the SAC identifies two possible chains of title under which
Bank of America, as trustee for the WaMu Securitized Trust, could claim to be the holder
of the Glaski deed of trust and alleges that each possible chain of title suffers from the
same defect—a transfer that occurred after the closing date of the trust.

      First, Glaski addresses the possibility that (1) Bank of America's chain of title is
based on its status as successor trustee for the WaMu Securitized Trust and (2) the Glaski
deed of trust became part of the WaMu Securitized Trust's property when the securitized
trust was created in 2005.  The SAC alleges that WaMu did not transfer Glaski's note and
deed of trust into the WaMu Securitized Trust prior to the closing date established by the
pooling and servicing agreement.  If WaMu's attempted transfer was void, then Bank of
America could not claim to be the holder of the Glaski deed of trust simply by virtue of
being the successor trustee of the WaMu Securitized Trust.

      Second, Glaski addresses the possibility that Bank of America acquired Glaski's
deed of trust from JP Morgan, which may have acquired it from the FDIC.  Glaski

----

[14] Although this allegation and the remainder of the SAC do not explicitly
identify the trustee of the WaMu Securitized Trust as the entity that invoked the power of
sale, it is reasonable to interpret the allegation in this manner.  Such an interpretation is
consistent with the position taken by Glaski's attorney at the hearing on the demurrer,
where she argued that the WaMu Securitized Trust did not obtain Glaski's loan and thus
was precluded from proceeding with the foreclosure.

contends this alternate chain of title also is defective because JP Morgan's attempt to transfer the Glaski deed of trust to Bank of America, as trustee for the WaMu Securitized Trust, occurred after the trust's closing date. Glaski specifically alleges JP Morgan's attempted assignment of the deed of trust to the WaMu Securitized Trust in June 2009 occurred long after the WaMu Securitized Trust closed (i.e., 90 days after December 21, 2005).

Based on these allegations, we will address whether a post-closing date transfer into a securitized trust is the type of defect that would render the transfer void. Other allegations relevant to this inquiry are that the WaMu Securitized Trust (1) was formed in 2005 under New York law and (2) was subject to the requirements imposed on REMIC trusts (entities that do not pay federal income tax) by the Internal Revenue Code.

The allegation that the WaMu Securitized Trust was formed under New York law supports the conclusion that New York law governs the operation of the trust. New York Estates, Powers & Trusts Law section 7-2.4, provides: "If the trust is expressed in an instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void."[15]

Because the WaMu Securitized Trust was created by the pooling and servicing agreement and that agreement establishes a closing date after which the trust may no longer accept loans, this statutory provision provides a legal basis for concluding that the trustee's attempt to accept a loan after the closing date would be void as an act in contravention of the trust document.

---

[15]    The statutory purpose is "to protect trust beneficiaries from unauthorized actions by the trustee." (Turano, Practice Commentaries, McKinney's Consolidated Laws of New York, Book 17B, EPTL § 7-2.4.)

20

We are aware that some courts have considered the role of New York law and rejected the post-closing date theory on the grounds that the New York statute is not interpreted literally, but treats acts in contravention of the trust instrument as merely *voidable*. (*Calderon v. Bank of America, N.A.* (W.D.Tex., Apr. 23, 2013, No. SA:12-CV-00121-DAE) ___ F.Supp.2d ___, [2013 WL 1741951 at p. *12] [transfer of plaintiffs' note, if it violated PSA, would merely be voidable and therefore plaintiffs do not have standing to challenge it]; *Bank of America National Association v. Bassman FBT, L.L.C.* (Ill.Ct.App. 2012) 981 N.E.2d 1, 8 [following cases that treat *ultra vires* acts as merely voidable].)

Despite the foregoing cases, we will join those courts that have read the New York statute literally. We recognize that a literal reading and application of the statute may not always be appropriate because, in some contexts, a literal reading might defeat the statutory purpose by harming, rather than protecting, the beneficiaries of the trust. In this case, however, we believe applying the statute to void the attempted transfer is justified because it protects the beneficiaries of the WaMu Securitized Trust from the potential adverse tax consequence of the trust losing its status as a REMIC trust under the Internal Revenue Code. Because the literal interpretation furthers the statutory purpose, we join the position stated by a New York court approximately two months ago: "Under New York Trust Law, every sale, conveyance or other act of the trustee in contravention of the trust is void. EPTL § 7-2.4. Therefore, the acceptance of the note and mortgage by the trustee after the date the trust closed, would be void." (*Wells Fargo Bank, N.A. v. Erobobo* (Apr. 29, 2013) 39 Misc.3d 1220(A), 2013 WL 1831799, slip opn. p. 8; see Levitin & Twomey, *Mortgage Servicing, supra,* 28 Yale J. on Reg. at p. 14, fn. 35 [under New York law, any transfer to the trust in contravention of the trust documents is void].) Relying on *Erobobo*, a bankruptcy court recently concluded "that under New York law, assignment of the Saldivars' Note after the start up day is void *ab initio*. As such, none

21

of the Saldivars' claims will be dismissed for lack of standing." (*In re Saldivar* (Bankr.S.D.Tex., Jun. 5, 2013, No. 11-10689) 2013 WL 2452699, at p. *4.)

We conclude that Glaski's factual allegations regarding post-closing date attempts to transfer his deed of trust into the WaMu Securitized Trust are sufficient to state a basis for concluding the attempted transfers were void. As a result, Glaski has a stated cognizable claim for wrongful foreclosure under the theory that the entity invoking the power of sale (i.e., Bank of America in its capacity as trustee for the WaMu Securitized Trust) was not the holder of the Glaski deed of trust.[16]

We are aware that that some federal district courts sitting in California have rejected the post-closing date theory of invalidity on the grounds that the borrower does not have standing to challenge an assignment between two other parties. (*Aniel v. GMAC Mortgage, LLC* (N.D.Cal., Nov. 2, 2012, No. C 12-04201 SBA) 2012 WL 5389706 [joining courts that held borrowers lack standing to assert the loan transfer occurred outside the temporal bounds prescribed by the pooling and servicing agreement]; *Almutarreb v. Bank of New York Trust Co., N.A.* (N.D.Cal., Sept. 24, 2012, No. C 12-

---

[16] Because Glaski has stated a claim for relief in his wrongful foreclosure action, we need not address his alternate theory that the foreclosure was void because it was implemented by forged documents. (*Genesis Environmental Services v. San Joaquin Valley Unified Air Pollution Control Dist.* (2003) 113 Cal.App.4th 597, 603 [appellate inquiry ends and reversal is required once court determines a cause of action was stated under any legal theory].) We note, however, that California law provides that ratification generally is an affirmative defense and must be specially pleaded by the party asserting it. (See *Reina v. Erassarret* (1949) 90 Cal.App.2d 418, 424 [ratification is an affirmative defense and the defendant ordinarily bears the burden of proof]; 49A Cal.Jur.3d (2010) Pleading, § 186, p. 319 [defenses that must be specially pleaded include waiver, estoppel and ratification].) Also, "[w]hether there has been ratification of a forged signature is ordinarily a question of fact." (*Common Wealth Ins. Systems, Inc. v. Kersten* (1974) 40 Cal.App.3d 1014, 1026; see *Brock v. Yale Mortg. Corp.* (Ga. 2010) 700 S.E.2d 583, 588 [ratification may be expressed or implied from acts of principal and "is usually a fact question for the jury"; wife had forged husband's signature on quitclaim deed].)

3061 EMC) 2012 WL 4371410.) These cases are not persuasive because they do not address the principle that a borrower may challenge an assignment that is void and they do not apply New York trust law to the operation of the securitized trusts in question.

E.    Application of *Gomes*

The next question we address is whether Glaski's wrongful foreclosure claim is precluded by the principles set forth in *Gomes, supra,* 192 Cal.App.4th 1149, a case relied upon by the trial court in sustaining the demurrer. *Gomes* was a pre-foreclosure action brought by a borrower against the lender, trustee under a deed and trust, and MERS, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans in the secondary mortgage market. (*Id.* at p. 1151.) The subject trust deed identified MERS as a nominee for the lender and that MERS is the beneficiary under the trust deed. After initiation of a nonjudicial foreclosure, borrower sued for wrongful initiation of foreclosure, alleging that the current owner of the note did not authorize MERS, the nominee, to proceed with the foreclosure. The appellate court held that California's nonjudicial foreclosure system, outlined in Civil Code sections 2924 through 2924k, is a "'comprehensive framework for the regulation of a nonjudicial foreclosure sale'" that did not allow for a challenge to the authority of the person initiating the foreclosure. (*Gomes, supra,* at p. 1154.)

In *Naranjo v. SBMC Mortgage* (S.D.Cal., Jul. 24, 2012, No. 11-CV-2229-L(WVG)) 2012 WL 3030370 (*Naranjo*), the district court addressed the scope of *Gomes,* stating:

"In *Gomes,* the California Court of Appeal held that a plaintiff does not have a right to bring an action to determine the nominee's authorization to proceed with a nonjudicial foreclosure on behalf of a noteholder. [Citation.] The nominee in *Gomes* was MERS. [Citation.] Here, Plaintiff is not seeking such a determination. The role of the nominee is not central to this action as it was in *Gomes.* Rather, Plaintiff alleges that the transfer of rights to the WAMU Trust is improper, thus Defendants consequently

23

lack the legal right to either collect on the debt or enforce the underlying security interest." (*Naranjo, supra,* 2012 WL 3030370, at p. \*3.)

Thus, the court in *Naranjo* did not interpret *Gomes* as barring a claim that was essentially the same as the post-closing date claim Glaski is asserting in this case.

Furthermore, the limited nature of the holding in *Gomes* is demonstrated by the *Gomes* court's discussion of three federal cases relied upon by Mr. Gomes. The court stated that the federal cases were not on point because none recognized a cause of action requiring the noteholder's nominee to prove its authority to initiate a foreclosure proceeding. (*Gomes, supra,* 192 Cal.App.4th at p. 1155.) The *Gomes* court described one of the federal cases by stating that "the plaintiff alleged wrongful foreclosure on the ground that assignments of the deed of trust had been improperly backdated, and thus the wrong party had initiated the foreclosure process. [Citaiton.] No such infirmity is alleged here." (*Ibid.*; see *Lester v. J.P. Morgan Chase Bank* (N.D.Cal., Feb. 20, 2013) ___ F.Supp.2d___, [2013 WL 633333, p. \*7] [concluding *Gomes* did not preclude the plaintiff from challenging JP Morgan's authority to foreclose].) The *Gomes* court also stated it was significant that in each of the three federal cases, "the plaintiff's complaint identified a *specific factual basis* for alleging that the foreclosure was not initiated by the correct party." (*Gomes, supra,* at p. 1156.)

The instant case is distinguishable from *Gomes* on at least two grounds. First, like *Naranjo*, Glaski has alleged that the entity claiming to be the noteholder was not the true owner of the note. In contrast, the principle set forth in *Gomes* concerns the authority of the *noteholder's nominee,* MERS. Second, Glaski has alleged specific grounds for his theory that the foreclosure was not conducted at the direction of the correct party.

In view of the limiting statements included in the *Gomes* opinion, we do not interpret it as barring claims that challenge a foreclosure based on specific allegations that an attempt to transfer the deed of trust was void. Our interpretation, which allows borrowers to pursue questions regarding the chain of ownership, is compatible with

*Herrera v. Deutsche Bank National Trust Co.*, *supra*, 196 Cal.App.4th 1366. In that case, the court concluded that triable issues of material fact existed regarding alleged breaks in the chain of ownership of the deed of trust in question. (*Id.* at p. 1378.) Those triable issues existed because Deutsche Bank's motion for summary judgment failed to establish it was the beneficiary under that deed of trust. (*Ibid.*)

F.   Tender

Defendants contend that Glaski's claims for wrongful foreclosure, cancellation of instruments and quiet title are defective because Glaski failed to allege that he made a valid and viable tender of payment of the indebtedness. (See *Karlsen v. American Sav. & Loan Assn.* (1971) 15 Cal.App.3d 112, 117 ["valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust"].)

Glaski contends that he is not required to allege he tendered payment of the loan balance because (1) there are many exceptions to the tender rule, (2) defendants have offered no authority for the proposition that the absence of a tender bars *a claim for damages*,[17] and (3) the tender rule is a principle of equity and its application should not be decided against him at the pleading stage.

Tender is not required where the foreclosure sale is void, rather than voidable, such as when a plaintiff proves that the entity lacked the authority to foreclose on the property. (*Lester v. J.P. Morgan Chase Bank, supra*, ___ F.Supp.2d___, [2013 WL 633333, p. *8]; 4 Miller & Starr, Cal. Real Estate (3d ed. 2003) Deeds of Trust, § 10:212, p. 686.)

---

[17] See generally, Annotation, *Recognition of Action for Damages for Wrongful Foreclosure—Types of Action* (2013) 82 A.L.R.6th 43 (claims that a foreclosure is "wrongful" can be tort-based, statute-based, and contract-based).

25

Accordingly, we cannot uphold the demurrer to the wrongful foreclosure claim
based on the absence of an allegation that Glaski tendered the amount due under his loan.
Thus, we need not address the other exceptions to the tender requirement. (See e.g.,
*Onofrio v. Rice* (1997) 55 Cal.App.4th 413, 424 [tender may not be required where it
would be inequitable to do so].)

### G.    Remedy of Setting Aside Trustee's Sale

Defendants argue that the allegedly ineffective transfer to the WaMu Securitized
Trust was a mistake that occurred outside the confines of the statutory nonjudicial
foreclosure proceeding and, pursuant to *Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428,
445, that mistake does not provide a basis for invalidating the trustee's sale.

First, this argument does not negate the possibility that other types of relief, such
as damages, are available to Glaski. (See generally, Annot., *Recognition of Action for
Damages for Wrongful Foreclosure—Types of Action, supra,* 82 A.L.R.6th 43.)

Second, "where a plaintiff alleges that the entity lacked authority to foreclose on
the property, the foreclosure sale would be void. [Citation.]" (*Lester v. J.P. Morgan
Chase Bank, supra,* ___ F.Supp.2d___, [2013 WL 633333, p. *8].)

Consequently, we conclude that *Nguyen v. Calhoun, supra,* 105 Cal.App.4th 428
does not deprive Glaski of the opportunity to prove the foreclosure sale was void based
on a lack of authority.

### H.    Causes of Action Stated

Based on the foregoing, we conclude that Glaski's fourth cause of action has
stated a claim for wrongful foreclosure. It follows that Glaski also has stated claims for
quiet title (third cause of action), declaratory relief (fifth cause of action), cancellation of
instruments (eighth cause of action), and unfair business practices under Business and
Professions Code section 17200 (ninth cause of action). (See *Susilo v. Wells Fargo Bank,*

26

*N.A.* (C.D.Cal. 2011) 796 F.Supp.2d 1177, 1196 [plaintiff's wrongful foreclosure claims served as predicate violations for her UCL claim].)

## IV.    JUDICIAL NOTICE

### A.    Glaski's Request for Judicial Notice

When Glaski filed his opening brief, he also filed a request for judicial notice of (1) a Consent Judgment entered on April 4, 2012, by the United States District Court of the District of Columbia in *United States v. Bank of America Corp.* (D.D.C. No. 12-CV-00361); (2) the Settlement Term Sheet attached to the Consent Judgment; and (3) the federal and state release documents attached to the Consent Judgment as Exhibits F and G.

Defendants opposed the request for judicial notice on the ground that the request violated the requirements in California Rules of Court, rule 8.252 because it was not filed with a separate proposed order, did not state why the matter to be noticed was relevant to the appeal, and did not state whether the matters were submitted to the trial court and, if so, whether that court took judicial notice of the matters.

The documents included in Glaski's request for judicial notice may provide background information and insight into robo-signing[18] and other problems that the lending industry has had with the procedures used to foreclose on defaulted mortgages. However, these documents do not directly affect whether the allegations in the SAC are sufficient to state a cause of action. Therefore, we deny Glaski's request for judicial notice.

---

[18] Claims of misrepresentation or fraud related to robo-signing of foreclosure documents is addressed in Buchwalter, *Cause of Action in Tort for Wrongful Foreclosure of Residential Mortgage,* 52 Causes of Action Second, *supra,* at pages 147 to 149.

27

B.    Defendants' Request for Judicial Notice of Assignment

The "ASSIGNMENT OF DEED OF TRUST" recorded on December 9, 2008, that stated JP Morgan transferred and assigned all beneficial interest under the Glaski deed of trust to "LaSalle Bank NA as trustee for WaMu [Securitized Trust]" together with the note described in and secured by the Glaski deed of trust was not attached to the SAC as an exhibit. That document is part of the appellate record because the respondents' appendix includes a copy of defendants' request for judicial notice that was filed in June 2011 to support a motion for judgment on the pleadings.

In ruling on defendants' request for judicial notice, the trial court stated that it could only take judicial notice that certain documents in the request, including the assignment of deed of trust, had been recorded, but it could not take judicial notice of factual matters stated in those documents. This ruling is correct and unchallenged on appeal. Therefore, like the trial court, we will take judicial notice of the existence and recordation of the December 2008 assignment, but we "do not take notice of the truth of matters stated therein." (*Herrera v. Deutsche Bank National Trust Co.*, *supra*, 196 Cal.App.4th at p. 1375.) As a result, the assignment of deed of trust does not establish that JP Morgan was, in fact, the holder of the beneficial interest in the Glaski deed of trust that the assignment states was transferred to LaSalle Bank. Similarly, it does not establish that LaSalle Bank in fact became the owner or holder of that beneficial interest.

Because the document does not establish these facts for purposes of this demurrer, it does not cure either of the breaks in the two alternate chains of ownership challenged in the SAC. Therefore, the December 2008 assignment does not provide a basis for sustaining the demurrer.

28

## DISPOSITION

The judgment of dismissal is reversed. The trial court is directed to vacate its order sustaining the general demurrer and to enter a new order overruling that demurrer as to the third, fourth, fifth, eighth and ninth causes of action.

Glaski's request for judicial notice filed on September 25, 2012, is denied.

Glaski shall recover his costs on appeal.

Franson, J.

WE CONCUR:

Wiseman, Acting P.J.

Kane, J.

29

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THOMAS A. GLASKI,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>BANK OF AMERICA, NATIONAL<br>ASSOCIATION et al.<br><br>  Defendants and Respondents. | F064556<br><br>(Super. Ct. No. 09CECG03601)<br><br>**ORDER GRANTING<br>REQUEST FOR<br>PUBLICATION** |

As the nonpublished opinion filed on July 31, 2013, in the above entitled matter hereby meets the standards for publication specified in the California Rules of Court, rule 8.1105(c), it is ordered that the opinion be certified for publication in the Official Reports.

_____

FRANSON, J.

I CONCUR:

_____

KANE, J.

30

🅐
Neutral
As of: July 15, 2013 12:34 PM EDT

## Halajian v. Deutsche Bank Nat'l Trust Co.

United States District Court for the Eastern District of California
February 13, 2013, Decided; February 14, 2013, Filed
1: 12 - CV - 00814 AWI GSA

**Reporter:** 2013 U.S. Dist. LEXIS 20341; 2013 WL 593671

BARRY HALAJIAN, an individual, Plaintiff, v.
DEUTSCHE BANK NATIONAL TRUST COMPANY,
AS TRUSTEE FOR GSAMP TRUST 2005-HE4, MORT-
GAGE PASS-THROUGH CERTIFICATES, SERIES
2005-HE4, a New York Corporation; JP MORGAN
CHASE BANK N.A., a national banking association
incorporated in New York; NDEx WEST LLC, a Delaware
limited liability company; and WHITNEY K. COOK, an
individual residing in Ohio; ALL PERSONS KNOWN OR
UNKNOWN CLAIMING AN INTEREST IN 4917 E.
SOONER DR., FRESNO, CALIFORNIA 93727; and
DOES 1-20 inclusive, Defendants.

**Prior History:** *Halajian v. Deutsche Bank Nat'l Trust Co.,*
*2012 U.S. Dist. LEXIS 69903 (E.D. Cal., May 18, 2012)*

**Counsel:** [*1] For Barry Halajian, Plaintiff: Randy
Risner, LEAD ATTORNEY, Law Office Of Randy Risner,
Fresno, CA.

For Deutsche Bank National Trust Co., JP Morgan Chase
Bank N.A., Defendants: Kristapor Vartanian, Laurie Hoe-
fert Selkowitz, Mark Leonard Block, LEAD ATTOR-
NEYS, Natasha S. Ahmed, Wargo & French LLP, Los
Angeles, CA.

For Whitney K Cook, Defendant: Deborah Lynn Stein,
LEAD ATTORNEY, Jonathan Michael Weiss, Simpson
Thacher & Bartlett, LLP, Los Angeles, CA; Laurie Hoefert
Selkowitz, LEAD ATTORNEY, Wargo & French LLP, Los
Angeles, CA.

**Judges:** ANTHONY W. ISHII, SENIOR UNITED
STATES DISTRICT JUDGE.

**Opinion by:** ANTHONY W. ISHII

Opinion

### ORDER GRANTING IN PART AND DENYING IN
### PART DEFENDANTS' MOTIONS TO DISMISS

(Docs. 30, 32.)

Plaintiff, acting through counsel, brings a second action
before this Court seeking injunctive relief, declaratory re-
lief, and damages relating to real property at 4917 East
Sooner Ave, Fresno, California. *(See 1:12-cv-00798-LJO*
*-SMS, 2012 U.S. Dist. LEXIS 75724.)* Plaintiff seeks to
enjoin his eviction from his Fresno County residence
("property") after a trustee's sale from the property by
bringing six causes of action: (1) a violation of *Califor-*
*nia Civil Code section 2923.5,* (2) Wrongful Foreclo-
sure, (3) Lack of Privity of Contract, (4) [*2] Quiet Title,
(5) Fraud and (6) Declaratory and Injunctive Relief.

Defendants Deutsche Bank National Trust Company and
Whitney K. Cook have filed motions to dismiss for fail-
ure to state a claim under *Federal Rule of Civil Proce-*
*dure 12(b)(6).* Defendants and Plaintiff both provided
documents to the Court in support of their pleadings of
which the Court has taken judicial notice.

For the reasons stated herein, the Court grants in part
and denies in part Defendants' Motions to Dismiss for fail-
ure to state a viable claim.

I.

### BACKGROUND[1]

On May 18, 2005, Halajian borrowed $175,200.00 from
lender Fremont Investment & Loan, signing an adjust-
able-rate note in which he promised to repay the lender no
later than June 1, 2035. The loan was secured by a
deed of trust for Halajian's property at 4917 East Sooner
Avenue, Fresno, California. Halajian agreed to the
terms and covenants of the deed of trust, executing it at
the same time as the note. The deed of trust named Fre-
mont General Credit Corporation [*3] as the Trustee, and
designated Mortgage Electronic Registration Systems,
Inc., (MERS) as the nominee for Fremont Investment &

---

[1] The factual history is provided for background; the assertions contained therein are not necessarily taken as true. The legally
relevant facts relied upon by the court are discussed within the analysis.

2013 U.S. Dist. LEXIS 20341, *3

Loan, its successors and assigns, to serve as the beneficiary of the deed of trust.

On June 28, 2010, Mortgage Electronic Registration Systems, Inc., as nominee for Fremont Investment & Loan, assigned to Deutsche Bank National Trust Company, as Trustee for GSAMP Trust 2005-HE4, Mortgage Pass-Through Certificates, Series 2005-HE4, all beneficial interest in the deed of trust and note executed by Halajian.

On May 17, 2010, ServiceLink, a Division of Chicago Title Company, on behalf of Chase Home Finance, L.L.C., and its agent NDEX West, LLC, filed a notice of default and intention to sell the property as a result of Halajian's failure to make required loan payments beginning February 1, 2010, and thereafter.

On March 7, 2011, Deutsche Bank filed an unlawful detainer action against Halajian in Fresno County Superior Court (Case No. 11CECL01998). *See Deutsche Bank Nat'l Trust Co. v. Halajian*, 2012 U.S. Dist. LEXIS 44203, 2012 WL 1076218 at *1 (E.D. Cal. March 29, 2012) (No. 1:12-cv-00447-LJO-GSA).

On April 28, 2011, Deutsche Bank moved for summary judgment in the unlawful detainer action; Halajian [*4] did not oppose the motion. *Id.* The Superior Court granted the motion and entered judgment on May 5, 2011. *Id.* A writ of execution for restitution of the property issued on June 2, 2011. *Id.* On June 10, 2011, Halajian moved to set the judgment aside or, in the alternative, stay execution of judgment. *Id.* On June 13, 2011, the Superior Court denied the motion to set aside the judgment but stayed the writ of execution. *Id.* After a second motion to set aside the judgment was denied, Halajian appealed to the state appellate court on June 20, 2011. *Id.* On June 22, 2011, Halajian moved to stay enforcement of the judgment pending appeal. *Id.* On June 28, 2011, the Superior Court granted the motion to stay.

Halajian filed a new appeal on October 26, 2011. *Id.*

On February 27, 2012, Deutsche Bank filed another unlawful detainer complaint against Halajian (12CECL01530). *Id.* On March 23, 2012, Halajian removed the case to federal court (*Case No. 1:12-cv-00447 -LJO-GSA, 2012 U.S. Dist. LEXIS 44203*). *Id.* The District Court remanded the action to Fresno County Superior Court on April 17, 2012. [2] On or about May 10, 2012, the Fresno County Superior Court entered judgment in favor of Deutsche Bank. Doc. 13-2.

On May 15, 2012, Halajian filed a complaint in propria persona with the District Court against Deutsche Bank National Trust Co., NDEX West LLC, JP Morgan Chase

Bank N.A., and Whitney K. Cook. *Halajian v. Deutsche Bank Nat'l Trust Co.* (Case No. 1:12-cv-00798-LJO-SMS, 2012 U.S. Dist. LEXIS 75724). On May 31, 2012 the District Court, on its own motion, dismissed with prejudice Halajian's complaint, calling the pleading "an ill -conceived attempt at legal sleight of hand." *Id.* Doc.2.

## II.

## LEGAL STANDARD

Under *Federal Rule of Civil Procedure 12(b)(6)*, a claim may be dismissed because of a plaintiff's "failure to state a claim upon which relief can be granted." A *Rule 12(b)(6)* dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988); *see also Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995). "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task [*6] is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). "[A] complaint should not be dismissed unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hartford Fire Insurance Co. v. California*, 509 U.S. 764, 811, 113 S.Ct 2891, 125 L. Ed. 2d 612 (1993).

The court must also assume that "general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). Thus, the determinative question is whether there is any set of "facts that could be proved consistent with the allegations of the complaint" that would entitle plaintiff to some relief. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). However, courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983). [*7] Further, although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 -50, 173 L. Ed. 2d 868 (2009); see also *Warren v. Fox*

[2]    A court may take judicial [*5] notice of its own records in other cases. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

2013 U.S. Dist. LEXIS 20341, *7

*Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir. 2003).

In deciding whether to dismiss a claim under *Rule 12(b)(6)*, the Court is generally limited to reviewing only the complaint. "There are, however, two exceptions ... First, a court may consider material which is properly submitted as part of the complaint on a motion to dismiss .... If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them. Second, under *Fed. R. Evid. 201*, a court may take judicial notice of matters of public record." *Lee v. City of Los Angeles,* 250 F.3d 668, 688-89 (9th Cir. 2001). The Ninth Circuit later gave a separate definition of "the 'incorporation by reference' doctrine, which permits us to take into account documents whose contents are alleged in a complaint [*8] and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005). Moreover, "judicial notice may be taken of a fact to show that a complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.,* 245 F.2d 67, 70 (9th Cir. 1956); see *Estate of Blue v. County of Los Angeles,* 120 F.3d 982, 984 (9th Cir. 1997).[3] "[A] court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss. Facts raised for the first time in opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice." *Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003)*, citations omitted.

If a *Rule 12(b)(6)* motion to dismiss is granted, claims may be dismissed with or without prejudice, and with or without leave to amend."[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting *Doe. v. United States,* 58 F.3d 494, 497 (9th Cir. 1995)). In other words, leave to amend need not be granted when amendment would be futile. [*10] *Gompper v. VISX, Inc.,* 298 F.3d 893, 898 (9th Cir. 2002).

## III.

## DISCUSSION

The first basis of Plaintiff's complaint is his assertions that Defendants Deutsche Bank and JPMorgan Chase Bank are not true creditors of Plaintiff because the loan in question was securitized and therefore have no right to assign, substitute or foreclose upon the loan. (Complaint ¶ 87.) Second, Plaintiff asserts that the assignment and substitution of trustee were invalid due to an absence of agency relationship between Ms. Cook and MERS or Deutsche Bank National Trust. (Complaint ¶¶ 19, 20.) Third, Plaintiff alleges that Ms. Cook's assignment of beneficial interest on behalf of MERS as nominee for Fremont General Credit Corp. was invalid because Fremont was "defunct" at the time of transfer. (Complaint ¶¶ 22,23.) Plaintiff further contends that Defendants failed to comply with statutory notice requirements for non-judicial foreclosure proceedings. (Complaint ¶¶ 64-69.)

### 1. Notice of Default

Plaintiff's first cause of action alleges a violation of *California Civil Code Section 2923.5*. *Subsection (b) of 2923.5* requires, "a notice of default filed pursuant to *section 2924* to include a declaration that the mortgagee, [*11] beneficiary, [or] authorized agent has contacted the borrower, or has tried with due diligence to contact the borrower as required by this section,..." "Civil Code *sections 2924-2924h,* inclusive, do not require actual receipt by a trustor of a notice of default or notice of sale. They simply mandate certain procedural requirements reasonably calculated to inform those who may be affected by a foreclosure sale and who have requested notice in the statutory manner that a default has occurred and a foreclosure sale is imminent.'" *Knapp v. Doherty,* 123 Cal. App. 4th 76, 88-89, 20 Cal. Rptr. 3d 1 (Cal. App. 6th Dist. 2004), citing *Lupertino v. Carbahal,* 35 Cal. App. 3d 742, 746-47, 111 Cal. Rptr. 112 (Cal. App. 3d Dist. 1973). Plaintiff disputes the truth of the declaration contained in the notice of default, not the fact of the notice of default's filing. Plaintiff pleads no facts in support of bald contention that Defendants did not comply with *section 2923.5*. (Complaint ¶¶ 66-68.) When attacking a non-judicial foreclosure sale, a borrower must over-

---

[3]    Deutsche Bank National Trust Co.'s request that the court take judicial notice of the Deed of Trust, Notice of Default and attached declaration, Notice of Sale, Substitution of Trustee, Assignment of Deed of Trust, and Trustee's Deed Upon Sale is granted. See Sears, 245 F.2d at 70; Lee, 250 F.3d at 688-89. Here, Plaintiff's complaint refers [*9] to the note, Deed of Trust, Notice of Default, Notice of Sale, and Substitution of Trustee.

Plaintiff objects that these documents do not satisfy the requirements of FRE 201 (Docket No. 34). These documents, however, are matters of public record and not generally subject to dispute. As such, this court may consider Plaintiff's pertinent loan and foreclosure documents.

Whitney K. Cook's request that the court take judicial notice of the PACER case locator results for Fremont Investment and Loan is granted to the extent that court recognizes Fremont Investment and Loan was actively attempting to enforce its rights as a creditor as recently as May 2, 2012.

## 2013 U.S. Dist. LEXIS 20341, *14

come a presumption of propriety. *Knapp v. Doherty*, 123 Cal.App.4th 76, 86 n. 4, 20 Cal.Rptr.3d 1 (2004). He may do this by proving an improper procedure occurred and by demonstrating **[*12]** resulting prejudice. *Id.* Even assuming a failure to do due diligence on the part of Ms. McCarty, signatory on behalf of Chase Home Finance for purposes of the declaration of compliance under *California Civil Code Section 2923.5(b)*, or Chase Home Finance, as agent for MERS as beneficiary, the plaintiff has neither shown prejudice nor even alleged that it exists,

Even if plaintiff could prove that the terms of *section 2923.5* were not complied with there is no remedy presently available to plaintiff under this section. As this Court has previously recognized, a California Court of Appeal has held that *section 2923.5* provides a pre-sale remedy *only* and that the only available remedy is a postponement of the foreclosure sale. *Mabry v. Superior Court*, 185 Cal.App.4th 208, 225, 110 Cal.Rptr.3d 201 (Cal.Ct.App. June 2, 2010). "There is nothing in *section 2923.5* that even hints that noncompliance with the statute would cause any cloud on title after an otherwise properly conducted foreclosure sale." *Id.* Once the sale is held, as it was here, the statute is no longer applicable. *Id.*

Under this cause of action plaintiff seeks to void the trustee sale. Under California law, "[a] valid and viable **[*13]** tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117, 92 Cal. Rptr. 851 (1971). Those courts that have examined the issue have found tender is required for claims under *Section 2923.5*. *See, e.g., Keen v. American Home Mortg. Servicing, Inc.*, 664 F. Supp. 2d 1086, 2009 WL 3380454 at. *10 (E.D.Cal. 2009)* (noting that overwhelming majority of California district courts require tender when examining wrongful foreclosure claims); *Anaya v. Advisors Lending Group*, 2009 U.S. Dist. LEXIS 68373, 2009 WL 2424037 at. *10 (E.D. Cal. 2009)* ("An action to set aside a foreclosure sale, unaccompanied by an offer to redeem, does not state a cause of action which a court of equity recognizes."); *Pantoja v. Countrywide Home Loans, Inc.*, 640 F.Supp.2d 1177, 1183-84 (N.D.Cal. 2009) ("Under California law, in an action to set aside a trustee's sale, a plaintiff must demonstrate that he has made a 'valid and viable tender [offer] of payment of the indebtedness.'") (quoting *Karlsen*, 15 Cal.App.3d at 117). No such tender has been alleged here.

Plaintiff's wrongful foreclosure claims under *California Civil Code Section 2923.5* must therefore be dismissed

**[*14]** without leave to amend.

## 2. Wrongful Foreclosure

Plaintiff's second cause of action alleges that "[n]one of the Defendants have standing to enforce the Note because they are not the owners of the Note, holder of the Note or beneficiary under the Note. None of the Defendants claims to be a holder of the Note or a beneficiary under the Note." (Complaint ¶ 73)

"If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly." *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 440, 129 Cal.Rptr.2d 436 (2003). The California Court of Appeal has explained non-judicial foreclosure under *California Civil Code sections 2924-2924l*:

> The comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive.... It includes a myriad of rules relating to notice and right to cure. It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings.

*Moeller v. Lien*, 25 Cal.App.4th 822, 834, 30 Cal.Rptr.2d 777 (1994). **[*15]** Under *California Civil Code section 2924(a)(1)*, a "trustee, mortgagee or beneficiary or any of their authorized agents" may conduct the foreclosure process. Under *California Civil Code section 2924(b)(4)*, a "person authorized to record the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee." "Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d (1994). In the present case Fremont General Credit Corporation was the original Trustee and MERS the original Beneficiary of the Deed of Trust. (Complaint ¶ 15.) (Notice of Default.)[4]

As the designated beneficiary and nominee for the lender under the Deed of Trust, MERS had the authority to assign the Deed of Trust and to substitute Trustee

---

[4] Plaintiff claims that "MERS has no standing to initiate legal actions concerning the property because MERS does not hold any legal or equitable interest in the debt or the property." (Complaint ¶ 30.) The judicially noticeable Deed of Trust specifically lists MERS as the nominee for the lender and the lenders successors and assigns as well as beneficiary which directly contradicts **[*16]** Plaintiff's legal conclusion.

2013 U.S. Dist. LEXIS 20341, *15

Corps as trustee. *See, e.g., Madrid v. Bank of Ameica Corp.,* 2011 U.S. Dist. LEXIS 75568, 2011 WL 2729429, at *3 (S.D.Cal. July 13, 2011) ("[P]ursuant to the Deed of Trust, MERS had the authority to assign its beneficial interest to another party."); *Castaneda v. Saxon Mortg. Services, Inc.,* 687 F.Supp.2d 1191, 1198 (E.D.Cal.2009) ("As the listed nominee and beneficiary under the Deed of Trust, MERS had authority to assign its beneficial interest to another party."); *Hensley v. Bank of New York Mellon,* 2011 U.S. Dist. LEXIS 57362, 2011 WL 2118810, at *3 (E.D.Cal. May 27, 2011) (internal citations omitted) ("[C]ourts have held that where MERS acts as a beneficiary under a deed of trust, it has the right to assign its interest. Moreover, *California Civil Code § 2934a* expressly authorizes a beneficiary under a deed of trust to substitute the trustee."); *Edwards v. Aurora Loan Services, LLC,* 2011 U.S. Dist. LEXIS 46892, 2011 WL 1668926, at *20 (E.D.Cal. May 2, 2011) ("California law permits a beneficiary to make a substitution of trustee and grant the power to foreclose."); *Lawther v. Onewest Bank,* 2010 U.S. Dist. LEXIS 131090, 2010 WL 4936797, at *6 (N.D.Cal. Nov.30, 2010) **[*17]** ("Courts in this Circuit have repeatedly recognized that MERS, as a named nominal beneficiary to a Deed of Trust, has the power to make assignments and substitutions under California's statutory foreclosure scheme."). Further, the deed of trust specifies that "[b]orrower understands and agrees that MERS holds only legal title to the interest granted by [b]orrower in this Security Instrument, but, if necessary, to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including but not limited to the right to foreclose and sell the property...." (Deed of Trust p. 3 of 5.) Additionally, California law does not require assignment to be made in writing for an assignee beneficiary to foreclose. *Parcray v. Shea Mortg. Inc.,* 2010 U.S. Dist. LEXIS 40377, 2010 WL 1659369 at, *11 (E.D. Cal. Apr. 23, 2010) Accordingly, MERS had standing to assign its beneficial interest.

Plaintiff claims that Ms. Cook was not a vice president or authorized agent of MERS acting as nominee for the "defunct" Fremont Investment and Loan for purposes of assignment of a beneficial interest in the trust. (Complaint ¶¶ 23, 60) Further, Plaintiff contends **[*18]** that the Substitution of Trustee made by Ms. Cook was invalid because of the alleged invalid assignment of beneficial interest and because Ms. Cook was not an authorized signatory of Deutsche Bank. (Complaint ¶ 62)

This Court recognizes a split of authority on the issue of whether allegations of lack of agency capacity of the signatory may underlie a wrongful foreclosure claim without judicially noticeable facts by either party. Many recent cases have held to the effect that the dual position of a signatory does not give rise to an inference of lack of agency relationship. *See Chua v. IB Property Holdings,LLC,* 2011 U.S. Dist. LEXIS 84683, 2011 WL 3322884, at, *2 (C.D. Cal Aug.1, 2011) ("[T]o the extent

that Plaintiffs take issue with Lisa Markham's dual position, Plaintiffs have not identified a relevant legal authority prohibiting one individual from working for both Citi-Mortgage and MERS or from acting as an agent for both.); *see also Couch v. JPMorgan Chase Bank, N.A.* No. CV 11-8710-GHK (Ssx), at *5 (C.D. Cal. May 14, 2012) (The mere fact that Derborah Brignac was not an employee of JPMorgan and Colleen Irby was not an employee of CRC does not give rise to a reasonable inference that they did not have the authority **[*19]** to sign documents on behalf of those companies.) Conversely, this District has also recognized a claim where the complaint stated that the signatory of the substitution of trustee was not in fact an officer of the corporation she purported to represent but rather an employee of a third party lender and defendant provided no judicially noticeable documentation to the contrary. *Michel v. Deutsche Bank Trust Company, as Trustee for GSAA Home Equity Trust 2006-2 et. al,* No 1;10-cv-2375 AWI SKO, 2012 U.S, Dist. LEXIS 134949 (E.D. Cal. Sept. 20, 2012); *see also Tang v. Bank of AM., N.A.,* 2012 U.S. Dist. LEXIS 38642, 2012 WL 960373, at *1-11 (C.D. Cal Mar. 19, 2012). (Aside from the very documents whose legitimacy is reasonably questioned by Plaintiffs, Defendants submit no judicially noticeable documents showing that [signatory] was indeed an agent for BOA and not MERS... The Court believes that it would benefit from the minimal discovery necessary to prove the agency relationship between BOA, MERS, and [signatory].). Consistent with its previous holding, the Court concludes that this issue is more appropriately resolved at the summary judgment stage. *Michel v. Deutsche Bank,* No. 1:10-cv-2375 AWI SKO, 2012 U.S, Dist. LEXIS 134949, at *9 (E.D. Cal. Sept 20, 2012); **[*20]** *Milyakov v. JP Morgan Chase, N.A.,* 2012 U.S, Dist. LEXIS 35415, at *12-13 (N.D. Cal. Mar. 15, 2012). Consistent with its ruling in Michel v. Deutsche Bank, the court holds that discovery necessary to prove that Ms. Cook was in fact an agent of MERS and Deutsche Bank National Trust is required before the court would reconsider a motion for summary judgment on the same ground. If Ms. Cook was not authorized to sign the assignment of deed of trust and substitution of trustee then both are invalid.

A trustee's sale undertaken by one who is not the valid trustee is void. *See Dimock v. Emerald Properties,* 81 Cal. App. 4th 868, 876, 97 Cal. Rptr. 2d 255 (Cal. App. 4th Dist. 2000); *Pro Value Properties, Inc. v. Quality Loan Service Corp.,* 170 Cal. App. 4th 579, 581, 88 Cal. Rptr. 3d 381 (Cal. App. 2d Dist. 2009). Where a trustee sale is void tender need not be alleged because the action is not based in equity. *Dimock v. Emerald Properties, LLC,* 81 Cal.App.4th 868, 877, 97 Cal. Rptr. 2d 255 (2000).

Without judicially noticeable documents showing that Ms. Cook was in fact authorized to sign on behalf of

MERS [5] and Deutsche Bank National Trust Co., this court will not dismiss the wrongful foreclosure cause of action at this stage. [6]

## 3. Securitization

Plaintiff does not have standing to challenge the securitization of his loan because he is not a party to the Pooling Service Agreement (PSA). *Junger v. Bank of Am., N.A.*, 2012 U.S. Dist. LEXIS 23917, 2007 U.S. Dist. LEXIS 980682012 WL 603262 *3 (C.D. Cal. Feb. 24, 2012); *see also In re Correia*, 452 B.R. 319, 324 (1st Cir. BAP 2011) [*22] (holding that debtors, as non-parties to a PSA, lack standing to challenge a mortgage assignment based on non-compliance with the agreement). [7]

Even if plaintiff had standing to address the securitization process, "securitization of a loan does not in fact alter or affect the legal beneficiary's standing to enforce the deed of trust." *Sami v. Wells Fargo Bank*, C 12-00108 DMR, 2012 U.S. Dist. LEXIS 38466, 2012 WL 967051, at. *5 (N.D. Cal. Mar. 21, 2012) (quoting *Reyes v. GMAC Mortgage LLC*, No. 11-0100, 2011 U.S. Dist. LEXIS 40953, 2011 WL 132275, at. *3 (D. Nev. April 5, 2011)); *see also Nguyen v. Bank of Am. Nat'l Ass'n*, 2011 U.S. Dist. LEXIS 131776, 2011 WL 5574917, at. *9 (N.D.Cal. Nov.15, 2011) (securitization of mortgage loan does not provide mortgagor with cause of action). To the extent Plaintiff contends that Defendants Deutsche Bank or NDEx West do not have the authority to foreclose because the loan was packaged and resold in the secondary market, this argument is rejected. *Lane v. Vitek Real Estate Industries Group*, 713 F.Supp.2d 1092, (E.D.Cal.2010) ("The argument that parties lose interest [*23] in a loan when it is assigned to a trust pool has also been rejected by numerous district courts."); *Benham v. Aurora Loan Services*, 2009 U.S. Dist. LEXIS 78384, 2009 WL 2880232 at. *3 (N.D.Cal. Sept.1, 2009). "[S]ecuritization merely creates a separate contract, distinct from [p]laintiffs['] debt obligations under the note, and does not change the relationship of the parties in any way." *Reyes*, 2011 U.S. Dist. LEXIS 40953, 2011 WL 1322775, at. *3. Accordingly, plaintiff's claim of the impossibility of "any servicer or trustee [being]... the agent for the holder of the note for purposes of standing to foreclose" is rejected. (Complaint ¶ 38.)

## 4. Privity of Contract

Plaintiff's third cause of action asserts that "Plaintiff's participation in the mortgage contract was procured by overt and covert misrepresentations and nondisclosures. The parties did not share a single expectation with respect to any of the terms of the mortgage contract and therefore the contract is void ab initio. No enforceable contract was formed between Plaintiff and any of these Defendants, so the Deed of Trust and Promissory Note were not assets of Defendants that could be acquired or assumed." (Complaint ¶¶ 106-107) Since the court has concluded previously that the plaintiff [*24] has stated a plausible claim based on the allegation that assignment of beneficial interest by Ms. Cook on behalf of MERS was invalid (*See supra* part III.2. Wrongful Foreclosure) but that the securitization process had no legal impact on the legal positions of the original parties to the note and deed of trust (*See supra* part III.3. Securitization), this section will deal only with the validity of the execution of the original deed of trust.

*California Civil Code Section 1550* requires four essential elements to a contract: 1) parties capable of contracting, 2) their consent, 3) a lawful object, and 4) sufficient cause or consideration. *Cal. Civ. Code § 1550*. *Section 1565* specifies that the requisite consent must be: 1) free, 2) mutual, and 3) communicated by each to the other. *Cal. Civ. Code § 1565*. It is plaintiff's claim that, "The parties did not share a single expectation with respect to any of the terms of the mortgage contract and therefore the contract is void ab initio." (Complaint ¶ 106)

"[A]bsent special circumstances . . . a loan transaction is at arm's length and there is no fiduciary relationship between the borrower and the lender." *Oaks Management Corp. v. Superior Court*, 145 Cal.App.4th 453, 466, 51 Cal. Rptr. 3d 561 (Cal. Ct. App. 2006); [*25] *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d at 1093 n.1 ("The relationship between a lending institution and its borrower-client is not fiduciary in nature."); *see Cross v. Downey S&L Ass'n*, 2009 U.S. Dist. LEXIS 17946, at *14 (C.D. Cal. Feb. 23, 2009). A commercial lender is entitled to pursue its own economic in-

---

[5] The court gives little weight to Plaintiff's request for judicial notice of the two page list of corporate [*21] officers of MERS as evidence that Ms. Cook is not an officer considering Plaintiff alleges in his complaint that MERS "has literally thousands of officers." (Complaint ¶ 26.)

[6] Plaintiff points out that "[MERS has] never ha[d] possession of the promissory note." (Complaint ¶ 27) "Under Civil Code section 2924, no party needs to physically possess the promissory note," *Sicairos v. NDEX West, LLC*, 2009 U.S. Dist. LEXIS 11223, 2009 WL 385855, at *3 (S.D.Cal.2009) (citing Cal. Civ.Code, § 2924(a) (1)). Rather, "[t]he foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee ." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777. An "allegation that the trustee did not have the original note or had not received it is insufficient to render the foreclosure proceeding invalid." *Neal v. Juarez*, 2007 U.S. Dist. LEXIS 98068, 2007 WL 2140640, *8 (S.D.Cal. 2007). Whether MERS or Fremont ever had possession of the promissory note has no legal bearing.

[7] Because the Court has determined that the plaintiff lacks standing, it does not address all of the remaining potential bases for dismissal on the related securitization claims.

terests in a loan transaction. *Nymark, 231 Cal.App.3d at 1093, n.1*. This right is inconsistent with the obligations of a fiduciary, which require that the fiduciary knowingly agree to subordinate its interests to act on behalf of and for the benefit of another. *Id.* Moreover, a lender "owes no duty of care to the [borrower] in approving [a] loan." *Wagner v. Benson, 101 Cal.App.3d 27, 35, 161 Cal. Rptr. 516 (1980). Wagner* held that as a matter of law, the lender did not owe a legal duty not to place borrowers in a loan even where there was a foreseeable risk that the borrowers would be unable to repay. *Id.; see also Cross, 2009 U.S. Dist. LEXIS 17946, 2009 WL 481482 at, *5* (lender has no duty to disclose to plaintiffs that they do not have the ability to repay the loan).

Plaintiff has pled no specific misrepresentations or nondisclosures that would give rise to the plausible existence of a cause of action in this [*26] case. Even if the original lender fully expected to sell the loan to investors immediately and wait for plaintiff's inevitable default, plaintiff states no claim for relief since none of the Defendants had no duty to disclose an adverse financial interest.

Based on the judicially noticed Deed of Trust it appears that Mr. Halajian and Fremont General Credit Corp. at least agreed to the terms of the 15 pages of the Deed of Trust bearing Halajian's initials and signature. This document is sufficient to meet the California requisite of objective mutual assent based on the reasonable meanings of the words and actions of the parties, not their unexpressed intentions or understandings. *Netbula, LLC. V. Blindview Development Corp., 516 F.Supp. 2d 1137, 1155 (N.D. Cal. 2007)*.

Since Plaintiff fails to state a claim upon which relief can be granted this claim is dismissed with leave to amend.

## 5. Quiet Title

Plaintiff's fourth cause of action attempts to state a claim for quiet title. To establish a claim for quiet title, plaintiff must file a verified complaint that alleges: (a) a description of the property; (b) plaintiff's title as to which a determination is sought; (c) the adverse claims to the [*27] title; (d) the date as to which the determination is sought; and (e) a prayer for the determination of title. *Cal. Code Civ. Proc. § 761.020*. Plaintiff fails as to part (c).

Plaintiff states that "Defendant Deutsche Bank now claims title to the property by virtue of a void Trustee's Deed of Sale." (Complaint ¶ 111) Assuming that plaintiff is correct as to the invalid assignment of interest by MERS the plaintiff has not pled facts that would give rise to the legal conclusion that plaintiff has paramount title. An invalid assignment and substitution would still leave MERS as beneficiary and Fremont (or its succes-

sors or assigns) as lender and trustee as to the Deed of Trust defaulted on by Plaintiff.

Further, Plaintiff fails to explain the grounds on which his claim is based, as required by *section 761.020(c)*, other than a conclusory and legally inaccurate allegation that defendants are not the holders in due course of the promissory note or deed of trust for the property based on the securitization of the loan. Nor has plaintiff alleged tender or the ability to offer tender. *See Kelley Iv. Mortg. Elec. Registration, 642 F.Supp.2d 1048, 1057 (N.D. Cal.2009)* ("Plaintiffs have not alleged [*28] ... that they have satisfied their obligation under the Deed of Trust. As such, they have not stated a claim to quiet title."); *see also Distor v. U.S. Bank, NA, 2009 U.S. Dist. LEXIS 98361, 2009 WL 3429700, at *6 (N.D.Cal. Oct.22, 2009)* ("plaintiff has no basis to quiet title without first discharging her debt, and ... she has not alleged that she has done so and is therefore the rightful owner of the property"). "Nothing short of the full amount due the creditor is sufficient to constitute a valid tender, and the debtor must at his peril offer the full amount." *Rauer's Law & Collection Co. v. Sheridan Proctor Co., 40 Cal.App. 524, 525, 181 P. 71 (1919)*.

To obtain "rescission or cancellation, the rule is that the complainant is required to do equity, as a condition to his obtaining relief, by restoring to the defendant everything of value which the plaintiff has received in the transaction. . . . The rule applies although the plaintiff was induced to enter into the contract by the fraudulent representations of the defendant," *Fleming v. Kagan, 189 Cal.App.2d 791, 796, 11 Cal. Rptr. 737 (1961)*. "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen, 15 Cal.App.3d at 117*. [*29] Nowhere in Plaintiff's complaint is tender even mentioned.

Therefore, Plaintiff's quiet title claim is insufficient to withstand a motion to dismiss under *Twombly,* 550 U.S. at 555 and should be dismissed with leave to amend.

## 6. Fraud

Plaintiff's fifth cause of action attempts to state a claim for fraud. Plaintiff's fraud claim relies on two central premises: First, securitization changed the relationships of the parties to the Deed of Trust and Promissory Note contracts, (Complaint ¶ 118,) and second, the parties who foreclosed upon plaintiff had no legal right to do so, (Complaint ¶¶ 119-123.) This court has already determined that securitization does not alter the relationships of the parties to the original agreement. *See supra,* part III.3., Securitization. Next, this court has already determined that plaintiff has alleged facts sufficient to state a plausible claim as to the lack of agency relationship between Ms. Cook and MERS and Ms. Cook and Deutsche Bank for purposes of a wrongful foreclosure action. *See supra,* part III.2, Wrongful Foreclosure. What is left

2013 U.S. Dist. LEXIS 20341, *29

to be determined is whether Plaintiff can meet the heightened pleading requirements of *Federal Rule of Civil Procedure 9(b)* [*30] and whether any of the Defendants had a duty to disclose information that they allegedly withheld from Plaintiff.

*Federal Rule of Civil Procedure 9(b)* provides that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy the rule, a plaintiff must allege the "who, what, where, when, and how" of the charged misconduct. *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir.1997). In other words, "the circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba—Geigy Corp, U.S.A.,* 317 F.3d 1097, 1106 (9th Cir.2003). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp, USA,* 317 F.3d 1097, 1106 (9th Cir. 2003). By contrast, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Fed. R. Civ. Pro. 9(b).* When a party pleads fraud against a corporation, as plaintiffs in this case, the already heightened pleading standard is further heightened. [*31] "The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Cerecedes v. U.S. Bankcorp,* 2011 U.S. Dist. LEXIS 75559, 2011 WL 2711071 at. *5 (C.D. Cal. July 11, 2011) (citing *Tarmann v. State Farm Mut. Auto. Ins. Co.,* 2 Cal.App. 4th 153, 2 Cal. Rptr. 2d 861 (1991)). Moreover, "[i]n the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Swartz v. KPMG, LLP,* 476 F.3d 756, 765 (9th Cir.2007) (quoting *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 541 (9th Cir.1989)).

Under California law, the "elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co., Inc. v. Dana Corp.,* 34 Cal.4th 979, 990, 22 Cal. Rptr. 3d 352, 102 P.3d 268 (2004).

Plaintiff's complaint alleges that, "Defendant Whitney K. Cook is a known robosigner having signed [*32] thousands of documents without sufficiently reviewing said documents or making any effort whatsoever to ascertain what the documents were for or what they were intended to do." The court is cognizant of reports of the use of robosigners by financial institutions. However, the court fails to see how the personal knowledge of Ms. Cook as to the contents of the Deed of Trust is signifi-

cant in this context when the Plaintiff does not argue that tender of the debt was paid or that the amount of the debt is inaccurate. *See Cerecedes v. U.S. Bankcorp,* 2011 U.S. Dist. LEXIS 75559, 2011 WL 2711071 at p. *5 (2011).

The court will recognize plaintiff's claim of misrepresentation insofar as plaintiff has already stated a claim that Ms. Cook may not have been authorized to sign on behalf of MERS and Deutsche Bank. Based on the recognized misrepresentation there is no plausible claim that Mr. Halajian justifiably relied on the false statement. Plaintiff merely alleges that he "reasonably relied upon the representations of the Defendants and or their predecessors, agents or assigns, in agreeing to execute the mortgage loan documents." (Complaint ¶ 128). Contrary to his assertion that he relied upon the representation, Mr. Halajian [*33] brought the present wrongful foreclosure suit based on the allegedly false assignment and substitution of trustee.

The failure or inability of plaintiff to allege reliance is fatal to plaintiff's fraud claim. It is therefore dismissed with leave to amend.

7. *Declaratory and Injunctive Relief*

Plaintiff's sixth cause of action requests declaratory and injunctive relief. This section of his Complaint is correctly understood as requesting a remedy. The court would note that the declaratory and injunctive relief requested is contingent on the outcome of the wrongful foreclosure cause of action. Since the second cause of action, wrongful foreclosure, has not been dismissed the court will not dismiss the requested relief.

**IV.**

**ORDER**

Defendants' motions to dismiss are GRANTED in part and DENIED in part. Plaintiff has stated a claim in the second and sixth causes of action based on the theory that the assignment and substitution of trustee were ineffective. Defendants' motions to dismiss the second and sixth causes of action are DENIED.

Defendants' motions to dismiss the first cause of action alleging a violation of *California Civil Code Section 2923.5* are GRANTED without leave to amend as to them.

Defendants' [*34] motions to dismiss the third, fourth, and fifth causes of action for lack of privity of contract, quiet title, and fraud, respectively, are GRANTED with leave to amend as to each of them. Plaintiffs may file an amended complaint within twenty one days of entry of this order.

IT IS SO ORDERED.

2013 U.S. Dist. LEXIS 20341, *34

Dated: February 13, 2013                         SENIOR DISTRICT JUDGE

/s/ Anthony W. Ishii